FELIPE CASTRO BETANCOURT, Plaintiff and Appellee, *v.* PAYCO, INCORPORATED and THE GREAT AMERICAN INDEMNITY COMPANY, Defendants and Appellants.

No. 10632. Argued November 18, 1952.—Decided June 30, 1953.

*Luis Blanco Lugo, R. Rivera Zayas, G. Rivera Cestero* and *Milton F. Rúa,* for appellants. *Romany & Romany* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Felipe Castro Betancourt sued Payco Inc., and The Great American Indemnity Company for damages. He alleged that on January 28, 1950, the defendant Payco Inc., sold him, through its employee Félix Rodríguez, some coconut ice cream which appeared fit for human consumption and that as a consequence of eating the ice cream he suffered from a severe poisoning which resulted in nausea, profuse vomiting, acute diarrhea and great physical and mental pain. As a consequence he had to be hospitalized and to receive medical treatment. He included Great American Indemnity Company as a party as the insurer of Payco Inc.[1]

Both defendants denied the essential facts of the complaint, and as special defenses Payco Inc. maintained that in the manufacture and preparation of the ice cream it sells for public consumption, it exercises the same or identical degree of care as that exercised by any other person engaged in the same business, and assuming that the facts alleged in the complaint were true, when the plaintiff bought the ice cream prepared in its factory, it had already left the defendant's immediate control and supervision. The defendant also argued that the complaint does not state facts which constitute a cause of action. The case was tried, the parties

---

[1] See § 175 of Act No. 66 of 1921 (Sess. Laws, p. 522), as amended by Act No. 19 of April 15, 1929 (Less. Laws, p. 160).

introduced evidence and the trial court rendered judgment, granting the complaint and ordering the defendants jointly to pay the plaintiff the amount of $300 as damages, legal interest from the date of the filing of the complaint until payment in full, plus the costs and $150 as attorney's fees. The judgment was based on an opinion containing the following findings of fact:

"That the corporation Payco Incorporated is engaged in the sale of ice cream for human consumption and . . . in the operation of that business it utilizes peddlers, to whom it furnishes carts for the sale of its product.

"That Félix Rodríguez was one of its peddlers, to whom it delivered each morning, besides the cart, a certain amount of ice cream for sale, and that in the evening Félix Rodríguez returned the unsold ice cream and collected for his work one cent and a half for each package of ice cream sold at the rate of five cents per package.

"That on January 27, 1950, Félix Rodríguez went out as usual with the cart furnished him by the defendant Payco Incorporated and stopped at the Porto Rico Commercial Institute, Inc., a school located on Luis Muñoz Marín Avenue, Río Piedras, and there sold coconut ice cream at about 3:00 p.m. to the plaintiff, as well as to other students of that school.

"That the plaintiff Felipe Castro Betancourt felt sick that same night and was taken to San Patricio Hospital, suffering from nausea, vomiting, stomach ache, cramps, diarrhea, fever, great loss of fluids and loss of consciousness.

"That the plaintiff . . . suffered from an acute and severe gastroenteritis, and Dr. José M. Torres treated him, since it was necessary for the plaintiff to remain in that hospital because of his illness during the night of January 27 to 28, 1950, . . . until February 3, 1950, when he was discharged.

"That the acute and severe gastroenteritis suffered by the plaintiff was due, according to the testimony of Dr. José M. Torres, . . . to the coconut ice cream he ate and which was sold to him by the peddler Félix Rodríguez.

"That the plaintiff . . . took no other food, neither on that day nor on the day before, besides the ice cream sold by Félix Rodríguez, except for the food he usually eats with his family, none of whom suffered any poisoning.

"That the cause of the plaintiff's poisoning . . . was the ice cream sold to him by Félix Rodríguez.

"That the defendant corporation Payco Incorporated was insured against this risk by the insurance corporation The Great American & Indemnity Co."

The defendants assign ten errors on appeal which include the following: that the lower court erred (1) in dismissing their motion for nonsuit; (2) in upholding the complaint; (3) in finding that the relationship between Félix Rodríguez, the peddler, and the codefendant Payco Inc., was one of employer and employee; (4) that § 1374 of the Civil Code, 1930 ed., is applicable to the issue herein; (5) that the evidence as to the care and skill in the preparation of the ice cream sold by the codefendant Payco Inc., was irrelevant, that the chemical analysis of the plaintiff's vomit and of the article sold was unnecessary and that the convinced judgment of the court that the ice cream was unwholesome is sufficient to grant the complaint; (6) that the ice cream was unwholesome; (7) that the poisoning suffered by the plaintiff was caused by the ice cream sold to him by Félix Rodríguez; (8) that the rule known in some of the United States as the rule of implied warranty is applied in Puerto Rico where the sale of food is concerned; (9) in finding that under the latter doctrine the plaintiff proved an action for damages; and (10) in ordering them to pay $150 as attorney's fees, despite the fact that they had not been obstinate and that the fees are excessive.

 A motion for nonsuit is only a demurrer to the evidence and admits the truth thereof insofar as it is. relevant. Furthermore, a scintilla of evidence in the proof offered by the plaintiff is enough to overrule the motion. *José Malgor & Co.* v. *B. Silva Sucrs.*, 70 P.R.R. 767. It is unquestionable that such scintilla of evidence existed in this case.

 On the other hand, although Rule 41(b) of the Rules of Civil Procedure provides that "After the plaintiff

has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief," that Rule does not have the effect which apparently we gave it in *Torres* v. *Marcano*, 68 P.R.R. 813. In discussing the motion for nonsuit filed by the defendant in the latter case we analyzed the evidence offered both by the plaintiff and the defendant and held that the lower court did not err in overruling the motion. At page 815 of volume 68 we also quoted the text of Rule 41(*b*) copied above. The latter gives the impression that on appeal a defendant may insist on his motion for nonsuit although he offered evidence in support of his case when his motion was overruled. This impression is erroneous. The Rule merely says that after the plaintiff has completed the presentation of his evidence, the defendant may present a motion for nonsuit, without waiving his right to offer evidence. The Rule does not say, however, that where the defendant offers evidence in support of his defense after his motion for nonsuit is overruled, he does not waive the motion. Construing that rule in 5 Moore's Federal Practice, 2d ed., there is the statement at page 1041 that: "If the motion is denied, the defendant may proceed to offer evidence. *If he does proceed he waives any right to object later that his motion was erroneously denied,*" (italics ours) citing several cases of Federal and state courts. We consider that this is the correct construction of the text of the Rule copied above, and that by proceeding to offer their evidence, the defendants waived their motion for nonsuit.[2]

The evidence introduced discloses that the defendant Payco Inc., daily gave to Félix Rodríguez, as well as to other peddlers, a certain amount of the products it manufactured,

---

[2] *Torres* v. *Marcano*, 68 P.R.R. 813, should be considered overruled insofar as it may be interpreted as holding that a defendant does not waive his motion for nonsuit if he offers evidence in his defense.

providing him gratuitously for the sale of such products with a company cart, which bore its name on the sides, that he did not pay for such products when they were delivered to him every morning, but upon returning in the evening would deliver the money from the sale of the sherbets and receive a percentage out of that money, and that Payco Inc., accepted the return of any products it had given him and which he had been unable to sell. The relationship existing between Payco Inc., and Rodríguez was one of employer and employee. It was so decided by this Court in *Atiles, Mgr.* v. *Industrial Commission*, 68 P.R.R. 107. *Cf. Morales* v. *Otero*, 53 P.R.R. 542; *Lotti* v. *The Charles McCormick Lumber Co.*, 51 P.R.R. 323; *Fuentes* v. *Ganetty*, 39 P.R.R. 160. In the first of those cases—*Atiles* v. *Industrial Commission*—the relationship of the defendant in this case, ·Payco Inc., and of the seller of its products was identical with the relationship which existed between the same Payco Inc., and Félix Rodríguez, a peddler. We now reaffirm our standard in that case.

 Sections 1373, 1374 and 1375 of our Civil Code, 1930 ed., textually copied, provide:

"Section 1373.—The vendor is bound to give a warranty against hidden defects which the things sold may have should they render it unfit for the use to which it was destined, or if they should diminish said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it; but said vendor shall not be liable for the patent defects or those which may be visible, neither for those which are not visible if the vendee should be an expert and who by reason of his trade or profession should easily perceive them.

"Section 1374.—The vendor is liable to the vendee for the warranty against faults or hidden defects in the things sold, even when they should be unknown to him.

"This provision shall not obtain if the contrary should have been stipulated and the vendor should not have been aware of said faults or hidden defects.

"Section 1375.—In the cases of the two preceding sections the vendee may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts.

"If the vendor knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee, the latter shall have the same option, and, furthermore, be indemnified for the losses and damages should he choose the rescission."

" *'To give warranty'*," according to the eminent commentator Sánchez Román, *"is equivalent to giving a sound thing;* that is, to sell a thing respecting which no one may invoke and obtain judicial recognition of a right superior or contrary to the completeness of the right transmitted by the seller to the purchaser, in such terms that compliance with the essential purpose of the contract of sale, the conveyance of title in the thing sold from the seller to the purchaser, will be a conclusive and irrevocable fact; in addition, the thing sold should not be subject to other liens or encumbrances than those made known at the time of the sale and under the conditions accepted by the purchaser." (Italics ours.) 4 Sánchez Román, *Derecho Civil*, p. 569. Redhibitory vices or defects "are those defects that may give rise to rescission." 10 Manresa, *Código Civil Español*, p. 249, 1950 ed. ·

In discussing §§ 1484, 1485 and 1486 of the Spanish Civil Code, equivalent to §§ 1373, 1374 and 1375 of our Code quoted above, the well-known commentator Manresa, in the volume and pages of his aforesaid work, states that:

"The doctrine of redhibitory vices was first applied in Rome only to sale of animals; but thereafter, in the evolutionary progress of that right and through analogy, that doctrine was generally applied, including the sale of real property; . . . A redhibitory action is instituted to obtain the rescission of the contract of sale because of defects in the thing sold which shall be hereinafter listed, or, using the words of the Code, to with-

draw from the contract; and an action *quanti minoris* or *estimatoria* may be brought for the return of a part of the price paid by the purchaser, as a consequence of those same defects."

The action instituted here, however, is not a redhibitory or *estimatoria* action, but an action for an indemnity in money for the damages suffered by the plaintiff as a consequence of the ice cream he ate.

If plaintiff's action had to conform strictly to the provisions of §§ 1373 and 1374 naturally the award of damages would not lie, since according to the provisions of § 1375, *supra*, and in the case of the two preceding Sections, the only remedy of the purchaser is to choose between withdrawing from the contract, after being paid the expenses which he may have incurred, or demanding a proportional reduction of the price. That has not been, we repeat, the purpose of this action, but rather the purpose indicated in the preceding paragraph. On the other hand, if the action had to conform to the provisions of § 1375, it could not prosper either, since in order to be entitled to damages, the plaintiff would have to allege and prove that he chose to rescind the contract. Since in accordance with § 1247 of the Civil Code "rescission obliges the return of the things which were the objects of the contract, with their fruits and the price with interest" and "it can only be carried into effect when the person who may have claimed it can return that which, on his part, he is bound to do," in order to fall within the purview of § 1375, the plaintiff would have to allege and prove not only that he suffered damages, but also that he is willing and able to return the thing which was the object of the contract. In cases like this in which the object of the contract is food which has been eaten by the purchaser, returning the object is physically impossible. Therefore, § 1375 is not applicable either. *Cf.* Manresa, *op. cit.*, vol. 10, p. 251 and vol. 8, p. 142.

Section 2 (c) of Act No. 72 of April 26, 1940 (Sess. Laws, p. 492) known as the "Puerto Rico Food, Drug and Cosmetic Act," provides that "The term 'food' shall mean (1) articles

used for food or drink for man or other animals, . . .";[3] § 2 (*p*) provides that "The provisions of this Act regarding the selling of food, . . . shall be considered to include also the *manufacture, production, processing*, packing, exposure, offer, possession, and holding of any such article for sale; . . ."; § 3 that "The following acts and the permitting thereof within Puerto Rico are hereby prohibited: (*a*) the *manufacture, sale,* or *delivery, holding or offering for sale of any food,* . . . that is adulterated or misbranded . . . (*c*) the receipt in commerce of any *food,* . . . that is *adulterated* . . . and the delivery or proffered delivery thereof for pay or otherwise;" and § 10 that "A food shall be deemed to be adulterated: (*a*) (3) if it consists in whole or in part of a deceased, contaminated, filthy, putrid or decomposed substance, or if it is otherwise unfit for food." (Italics ours.) Consequently, when the manufacturer of an article used for food offers it for sale for human consumption, the presumption is that he has complied with the Act,[4] that he has placed on the market an unadulterated article and that he warrants that it is fit for its intended use.

The majority of states in which this question has arisen, adhere to the rule of implied warranty, that is, that the person who serves or sells food for human consumption impliedly warrants that the product is wholesome and fit for human consumption. See the Annotation in 7 A.L.R. 2d 1027 and following. This doctrine is applicable in Puerto Rico according to the provisions of Act No. 72 of 1940 mentioned above.

In Louisiana, where the Civil Code has Sections somewhat similar to the above-quoted Sections of our Code, it

---

[3] It is undeniable that the coconut ice cream in question falls squarely within the definition given by Act No. 72, *supra*, to the word food.

[4] In accordance with § 464 of the Code of Civil Procedure—§ 102 of the Law of Evidence— "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions and may be controverted by other evidence. The following are of that kind: . . . 32.—That the law has been obeyed."

has been held that the seller of a product for human consumption is answerable in damages to the purchaser if the product turns out to be deleterious. *Boyd* v. *J. C. Penny Co.*, 195 So. 87; *Ogden* v. *Rosedale Inn*, 189 So. 162; *Kelly* v. *Ouachita Dairy Dealers Cooperative Association*, 175 So. 499; *MacLehan* v. *Loft Candy Stores*, 172 So. 367, establishing the principle that everyone knows the qualities, good or bad, of the things which he fabricates in the exercise of his art, craft or business and that lack of such knowledge is imputed to him as a fault which makes him liable to the purchasers of his manufactured products for the damages resulting from imperfections or defects which he did not make known to the purchasers and of which they were ignorant. Under the doctrine of implied warranty previously enunciated, a similar principle is applicable in this jurisdiction.

Deciding a case similar in nature to the one here involved —not as to its facts but as to the right involved—the Supreme Court of the United States in *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, stated at p. 116: "But when the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, *and was cognizant of any latent defect caused by such process* and against which reasonable diligence might have guarded. This presumption is justified, in part, by the fact that the manufacturer or maker by his occupation holds himself out as competent to make articles reasonably adapted to the purposes for which such or similar articles are designed . . . If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, *the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use.*" (Italics ours.) On this point, see also 4 Tulane Law Review, 600, 627 and 632,

note 85; *Pullman Palace Car Co.* v. *Metropolitan Street R. Co.*, 39 L. ed. 632, 638.

▪ It was of course an error of the trial court to conclude that plaintiff's action was based on § 1374 of the Civil Code. Such error, however, is not reversible. The appeal is taken from the judgment and not from the grounds of the opinion.

▪ The trial court found, as we have seen, that the nausea, vomit, diarrhea, etc., suffered by the plaintiff were directly produced by the coconut ice cream he ate. Its finding is supported by the evidence. In thus finding it gave credit to the testimony of Dr. José M. Torres, to the testimony of the plaintiff himself and to the testimony of his witness, Francisco Estrada, who upon being examined by his own attorney testified that on the day in question Castro Betancourt and he were working on the construction of a wall and at recreation time, they both went out to eat Payco sherbets; that when the recreation was over and after resuming work Castro Betancourt began to complain and to say that he did not feel well, and that he later suffered from pain and convulsions; that in view of that he felt like causing himself to vomit, lest he also be taken ill, and that when he got home he had diarrhea for two days, "but I took some medicinal tea and nothing happened to me and I went back to school next day" and that other persons purchased ice cream that day some of whom told me that they felt sick with nausea.

The law does not require that a fact be proved with mathematical certainty, but only with reasonable certainty. *Colón* v. *Shell Co.*, 55 P.R.R. 575, 601–2; § 366 Code of Civil Procedure, 1933 ed., § 4, Law of Evidence. From the evidence before it, the trial court could arrive at the conclusion it did, without there being need to analyze chemically the plaintiff's vomit or the ice cream sold to the latter. *Cf. Whittier* v. *Village of Farmington;* 131 N. W. 1078.

 Attorney's fees must be awarded when in the opinion of the trial court the losing party has been obstinate. Act No. 94 of 1937 (Sess. Laws, p. 229).[5] In ordering the defendants to pay such fees, it should be presumed that the court concluded that the defendants had been obstinate. *Font* v. *Pastrana*, 73 P.R.R. 238. We do not find that in so concluding the lower court erred, or that the sum awarded is excessive.

 However, the lower court did err in its judgment in ordering that legal interest be paid from the date of the filing of the complaint. In cases of this nature, interest shall be paid from the date judgment is rendered. *Sosa* v. *Morales*, 58 P.R.R. 362; *Frías* v. *Berríos*, 58 P.R.R. 138; *Miranda* v. *P. R. Ry. Light & Power Co.*, 50 *D.P.R.* 974. However, appellant did not assign this error, nor is it reversible.

The judgment appealed from will be modified, interest will be awarded from the date the judgment was rendered, and as modified, it will be affirmed.

---

[5] See also Act No. 411 of May 11, 1951 (Sess Laws, p. 1094); likewise the amendment to § 327 of the Code of Civil Procedure.